(Judge Hull of the sixth circuit, sitting in place of Judge Marvin.)

### J. TWING BROOKS, EXR., ETC. V. CASSIUS B. HANNA, ET AL.

1. CONSTRUCTION AS TO DATE FOR DISTRIBUTION.
    Under a provision in a will that the executor and trustee shall continue to control and manage the estate, from year to year, until the youngest child of testator's daughter shall come of age, or until such further perio as, in his opinion, the welfare of testator's son, or testator's grandchildren, will be thereby promoted, it is within the discretion of the executor, after the maturity of the grandchild referred to, to make final distribution during the life of the son or as soon after his death as he can.

2. DEVISE NOT REACHING CORPUS OF ESTATE.
    Under a will directing the executor and trustee, as soon as convenient after testator's death, to purchase a home for the latter's son, if he shall so request, taking title thereto in his own name as executor and trustee, said home to be kept for said son, free of rent, so long as he desires to occupy the same, and providing further that one-half the net income from testator's estate, after settlement of other matters, shall be expended for the benefit of said son and his family, to such extent and as the executor and trustee deems advisable, the surplus to be invested and distributed in the same manner, with remainder to testator's grandchildren, neither the son nor his wife are entitled to any portion of the *corpus* of the estate; and the son has no interest in the income beyond what the executor and trustee may see fit to expend for him.

3. REVENUE FROM OPEN MINES WHERE THERE IS LIFE ESTATE.
    Where mines upon property devised to one person for life, with remainder over, are open and in operation at the time of testator's death, the clear intent is that they shall continue to be worked; and a will providing that mines are to be opened and worked amounts to an appropriation as income of the coal or other material mined during the life estate; in either case the remainderman would get only such coal or other material as was not mined during the life estate.

4. A DIFFERENT RULE APPLIED.
    The foregoing rule is not applicable where no separate or life estates are created and all devisees share in the estate simply in different proportions, *i. e.*, in the income until final distribution, and in that event the estate to be distributed to grandchildren equally, and where mines are not in operation at testator's death and no specific reference is made to the property in the will, and property is subsequently leased for mining coal; in such case, the rents or royalties on the product of the mines are principal, not income. And although the executor and trustee has broad discretion, to sell or rent, he has no authority to convert a part of the real estate into money and call it income, and thus affect the proportion of the remainder to be divided among grandchildren.

Brooks v. Hanna.

**5. PROVISIONS AS TO EQUALIZING DEVISES.**

Under a provision, "I wish and direct my executor to ascertain the amount of advances of money I shall have made during my life to my son Cassius in excess of what I have made to my daughter Ariel, and deduct the same," in a will directing the income from testator's estate to be expended for the benefit of said son and daughter, the estate to be eventually divided equally among grandchildren, the executor should deduct the sum advanced to the son, in excess of that paid the daughter, from the principal of the estate, and, if the daughter is not living, divide it equally among her children.

**6. EXCESS DOES NOT DRAW INTEREST.**

The provision as to equalization, referred to in the preceding paragraph, does not, under the will in question, amount to an appropriation by which the excess advanced the son at once, upon its ascertainment, becomes the property of the daughter or her children, in such a manner as, unless paid as early as possible, would entitle them to interest thereon.

**7. MONEY ACTUALLY ADVANCED—NO INTEREST ALLOWED.**

Money actually advanced to grandchildren, under the will in question, in the exercise of discretion vested in the executor, in the absence of anything giving it the character of a loan, becomes the property of such grandchildren, over which the executor no longer has control and upon which no interest can be charged.

**8. EXPENSE OF LITIGATION.**

The expense of litigation or defense of an action by creditors seeking to reach the interest of the son in testator's estate, under the will referred to, although it may have been of some interest to other devisees to have the question determined, is chargeable only upon the son's share of property or income.

**9. EXPENSE OF BOOKKEEPER.**

Where the keeping of books is not a duty contemplated within the duties prescribed by the will that the executor and trustee is to perform, and for which the will provides a certain yearly compensation, it is an expense not in contemplation of the will, to be taken out of the yearly compensation; and, if a bookkeeper is necessary, a reasonable sum for such work may be taken out of the money of the estate therefor over and above the executor's compensation.

**10. INCOME NOT SUFFICIENT FOR EXPENSES—PRINCIPAL USED.**

When the income of any one year is insufficient to bear the necessary expenses of that year, such as taxes, etc., and allow a sufficient remainder to pay the trustee his annual dues under the will, he may take the deficiency out of the principal; and is not required thereafter, by reason of income coming into his hands, to charge the same to income and credit it to the estate.

**11. ONLY SUCH QUESTIONS AS HAVE ARISEN DETERMINED.**

It is a rule in Ohio that only such questions as have arisen, not those that are likely to or may possibly arise, shall be determined. Therefore, under a will authorizing executor to purchase a house for each of testator's grandchildren, the court declines to construe that provision where it appears that none of the grandchildren have asked or are likely to ask for a home.

### PETITION FOR CONSTRUCTION OF WILL.

J. Twing Brooks, plaintiff, says that Robert Hanna, deceased, late of the city of Cleveland, Ohio, died on or about April 2, 1882; that prior to his decease he made and executed his last will and testament, and subsequently a codicil thereto; that the same were, after his decease, duly admitted to probate and record in the probate court of Cuyahoga county, Ohio; a copy of which will and codicil, as probated, are hereto attached, marked "Exhibit A," and made a part of this petition.

The plaintiff says that the above named defendant, Cassius B. Hanna, was the son of the said Robert Hanna, deceased; that his last postoffice address known to plaintiff was Santa Rosa, California.

That Harriet L. Hanna was and is the wife of the said Cassius B. Hanna.

That Ariel T. Hanna and Edith F. Hanna are daughters of the said Cassius and Harriet L. Hanna, and members of his family.

That Harriet W. Uhl, formerly Harriet Whitacre, and now intermarried with the defendant, Harrison J. Uhl, and Mary W. Seelye, formerly Mary Whitacre, and now intermarried with the defendant, Thomas T. Seelye; and Robert W. Hanna, alias Robert H. Whitacre, are each grandchildren of the deceased Robert Hanna, and children of Ariel Whitacre, the daughter of Robert Hanna, deceased.

31  O. C. D.  Vol. 10

Cuyahoga Circuit Court.

Plaintiff says that said Robert H. Whitacre, by judgment and decree of the court of common pleas of Cuyahoga county, in proceedings duly had, procured, and caused his name to be changed to that of Robert W. Hanna.

Plaintiff says that each and all of said defendants, except Cassius B. Hanna and the said Robert W. Hanna, are residents of said city of Cleveland; and that the residence of the said Robert W. Hanna is to the plaintiff unknown.

Plaintiff says that the said Cassius B. Hanna, and the said members of his family, as well as said grandchildren of the deceased Robert Hanna, the children of Ariel Whitacre, deceased, are each and all legatees under and by virtue of the provisions of said last will and testament, and codicil thereto.

Plaintiff says that in and by said last will and testament, and the codicil thereto, he was made executor and trustee of the estate of said Robert Hanna, deceased, and that a large portion of the estate of said Robert Hanna was devised to this plaintiff under the provisions of said will in trust, as will appear from the provisions of said will.

That plaintiff accepted said trust, and has ever been in full charge and control of said estate, and has endeavored, according to the best of his ability, to honestly and faithfully administer the same, and carry out the provisions of said trust.

He says that Harriet A. Hanna, widow of said Robert Hanna, deceased, died soon after her husband, thus leaving the whole estate to the other beneficiaries named in the will, but in accordance with the provisions thereof.

That the daughter of said testator, Ariel Whitacre, died before the making of said will, leaving her three children, to-wit, Harriet Whitacre, Mary Whitacre and Robert H. Whitacre, who as before stated, are still living, and who are beneficiaries under said will, and are the children of " my daughter Ariel," referred to in said will.

That the youngest of said living children of the said Ariel Whitacre, to-wit, Robert H., became of full age September 17, 1894, and each of the others had arrived at the age of majority before that date.

Plaintiff says that at the time of the death of the said Robert Hanna, and at the time of the making of said will, and ever since, the family of Cassius B. Hanna consisted of himself and his wife Harriet L. Hanna, and their two children, to-wit., Ariel T. Hanna and Edith F. Hanna, the latter still a minor.

Plaintiff says that the said testator, Robert Hanna, died during the month of April, 1882, and that plaintiff has yearly divided the net income of the estate into two equal parts, paying to and expending for the support of the two families the entire net income of the estate under the will as constructed and computed by plaintiff.

Plaintiff says that the said Cassius B. Hanna was largely indebted at the time of the execution of said will; that his condition in that respect has not improved since the death of said Robert Hanna, and that some of his creditors have claimed that under the provisions of said will, he, the said Cassius, had a vested interest in the estate of his said father, and especially in the whole of one-half of said income, and that one F. A. Reynolds, who claimed to be a creditor of the said Cassius in a large amount, to-wit, about $50 000.00, filed his petition in the circuit court of the United States for the northern district of Ohio, and made this plaintiff a defendant in said action, and that after a somewhat lengthy litigation, the said Reynolds obtained a judgment against this plaintiff in said United States circuit court; and this plaintiff appealed said cause to the United States circuit court of appeals, and there obtained a decree in favor of this plaintiff; and plaintiff was compelled to and did expend a considerable amount of money in payment of costs and attorney's fees, in connection with said litigation.

Plaintiff says that he is informed and believes, and therefore avers, that the said Cassius B. Hanna is poor, in ill health, and has no means of support, except the small amount of money furnished him from time to time by plaintiff; that he is becoming advanced in years, and apparently unable to maintain himself by his own labor, and has no visible prospect of means of support during the remainder of his natural life.

The plaintiff says that he has constructed said will to authorize a settlement or division of the estate, when the youngest child of Ariel arrives at legal age, while others claim that it can not be so divided and settled during the life of said Cassius B. Hanna.

Plaintiff says that Item 9, of said will. as the court will see from said copy, provides:

" I will and direct that my executor shall continue to control and manage my estate, and distribute, or distribute and invest the annual income of my estate as hereinbefore provided, from year to year, until the youngest child of my daughter

Brooks v. Hanna.

Ariel then living shall come of age, or until such further period as in his opinion the welfare of my son Cassius or of my grandchildren will be thereby promoted and whenever it shall so seem prudent to my said executor, but in no event till then. I authorize and direct him to divide and distribute the whole of my estate among my grandchildren," etc.

Plaintiff says that in his opinion the welfare of Cassius would require the postponement of the final distribution of said estate until the time of his decease, and in the opinion of plaintiff, the welfare of the grandchildren of the testator would probably be promoted by an early distribution of the estate.

Plaintiff says that he is of the opinion that under the will, he may make advances to the beneficiaries before such final distribution, limiting the same to each, so as not to interfere with the rights of others.

Plaintiff says that it is further provided in said will, as follows:

" I direct my said executor to invest a portion of the share hereinbefore provided for each of my grandchildren, in a home for such grandchild, in which said child shall have a life estate, with remainder of his or her heirs, it being my wish and purpose that each of my said granchildren shall be secured in a home beyond any contingency, during the period of his or her life."

Plaintiff says that it is somewhat difficult for him to ascertain in what manner he can secure a home to each of said grandchildren, beyond any contingency, during the period of his or her life, and that this and various other questions arising under said will, as to the rights and duties of this plaintiff, as such executor and trustee, are difficult to determine, and upon and in regard to which questions, plaintiff is not willing to trust his own judgment, knowing the various opinions expressed by others in relation thereto ; and, believing that he is authorized by law, and that it is his duty, to apply to this court for its judgment in respect to various matters of the trust estate to be administered, and the rights of the parties interested, he asks the direction of the court in the premises, upon the following matters, to-wit:

First—To what extent can he now make advancement to the children of Ariel and Cassius B.?

Can he make equal advances to all, or shall the same be confined to the children of age?

Second—When, and under what circumstances, may plaintiff make final settlement and distribution of the estate?

May he make such settlement and distribution when Edith F. Hanna arrives at the age of majority?

Must any part of the estate be retained by him during the life of Cassius, and when may he properly and safely make a final distribution of the whole?

Third—On final distribution, are or will Cassius B. and his wife, or either of them, be entitled to any portion of the estate, and if so, what? Or, does their interest then wholly cease?

Fourth—What interest, if any, has Cassius B. and his family, in the one-half of the income, beyond such sums as the executor in his judgment may deem proper to expend for their support and the education of the beneficiaries, and can it be divided so as to say, so much shall go to the family, and so much to Cassius?

Fifth—Plaintiff says that among the assets of said estate was one hundred and sixty acres of coal land in the Hocking Valley country; that the same appears among assets of the estate as coming into the possession of the executor, at $30,000.00. That afterwards he conditionally disposed of the coal in said lands, under an instrument or writing, a copy of which is hereto attached, and marked "Exhibit B," and made a part of this petition.

And plaintiff says that under said instrument of writing, and lease of said lands, he has received as rental about the sum of $49,000.00, although no coal has been mined from said lands, and no payments have been made by said lessees for nearly two years. That there is but little or no value to said land as such, when the coal is removed therefrom.

Plaintiff has treated the money received as such rental and for said coal (which under the terms of said lease, if coal is mined hereafter, will apply as royalty), as principal of said estate, but that it is claimed by some parties that the same is income, and that one-half thereof goes to Cassius and his family under the will.

Plaintiff desires to know whether said money so received under said lease is to be treated by him as a part of the principal of the estate to be disposed of on final distribution of the same, or whether it shall be treated by plaintiff as a part of the income?

It now appears that the lessee company has become insolvent, and plaintiff desires to know whether he shall enforce the provisions of forfeiture contained in

said lease, because of the non-payment of rental, or whether, in case said company becomes reorganized and tenders the payment now in default, plaintiff shall receive the same, and in that case, how and in what manner he shall dispose of such monies as he may receive in such payments?

Also, in case plaintiff should sell said land or his interest under said lease, in connection with said land, how he shall divide the proceeds?

Also whether plaintiff, in final distribution of the estate, may deed said land to the beneficiaries under said will, as tenants in common or in severalty?

Sixth—If the court find that said sum of money, so received from said coal lands, amounting to $49,000.00, shall be treated as income, then plaintiff desires to know in what manner he shall correct his accounts so as to do justice to the beneficiaries and legatees under the will of the said Robert Hanna, deceased, and at the same time protect himself, both in respect to advancing income, and how and in what manner, on final distribution and settlement of the estate, the assets so derived shall be distributed.

Seventh—Said J. Twings Brooks, executor and trustee as aforesaid, referring to item nine of said last will and testament, avers that prior to the death of said Robert Hanna, deceased, the said Robert Hanna had advanced to Cassius B. Hanna, in excess of the amount that he, the said Robert Hanna, had advanced to his daughter Ariel, the sum of $53,770.64; and that on or about August 30, 1883, it was agreed by and between the said Cassius B. Hanna and his executors and trustee, that the testator had advanced to the said Cassius and his family, in excess of the amount that he had advanced to his daughter Ariel and her family, during the lifetime of the said testator, the said sum of $53,770.64; and the plaintiff, as such executor and trustee, therefore asks instructions as to whether, in making final distribution of the estate of the said Robert Hanna, deceased, the said executor and trustee shall first add to the gross amount of the estate, as it then exists in his hands, the said sum of $53,770.64, advanced to Cassius and his family, or to Cassius alone, by the testator in his lifetime, over and above the advances made to the daughter Ariel and her family, as recited in the will of said testator, and then, after adding said sum to the gross amount of the estate as aforesaid, divide the total by five; giving the children of Ariel each their one-fifth and then deducting the said sum of $53,770.64 from the shares payable to the two children of Cassius; or whether the said executor and trustee shall take the said sum of $53,770.64 out of the assets then in his hands at the time of final distribution, and distribute the sum among the three children of Ariel, and then divide the remainder equally among the three children of Ariel, and the two children of Cassius; or in what manner the said sums so advanced to the said Cassius and his family by the said Robert Hanna during his lifetime, shall be applied in the final distribution of said estate, and how such distribution shall be made in regard thereto?

Plaintiff also requests the opinion and instruction of the court as to the funds, whether income or principal of said estate, out of which he shall pay attorney's fees which have been necessary in the litigation connected with this estate; and also, what amount will be a reasonable compensation for plaintiff, in addition to the $1,000.00 named in the will, to pay him for extraordinary services, as he has been compelled to employ a bookkeeper to keep the accounts of said estate and pay him therefor; and that he has also been compelled to travel and take with him attorneys' from Ohio, to the circuit court at Nashville, and also from Ohio to the United States court of appeals, at Detroit, Michigan, for the argument of causes pending against said estate.

Ninth—Item eight, of the will, provides that the trustee's compensation shall be paid out of the income of said estate.

Item twelve provides that the same may be paid out of the income, or in default of income, out of principal.

The income in certain years during the past administration of said estate, was so small, that the executor and trustee took his compensation of $1,000.00 a year out of the principal. In view of the fact that there was a certain amount of income each year, and of the further fact, that in the distribution of principal, the interests of the grandchildren are not the same as they are in the distribution of income, and in further view of the fact that the income in recent years is larger than it was theretofore, plaintiff asks the judgment of the court as to whether or not he shall charge back against income the amount that he has heretofore taken out of principal, as compensation for himself under the provisions of this will.

Tenth—Item nine, of the will, provides that a homestead shall be given to each grandchild, if living, during his or her natural life, the remainder to his or her heirs.

Brooks v. Hanna.

Plaintiff desires to know whether this clause is imperative, as some of the grandchildren are married and have homes, and may not desire an investment of this character for their benefit, and plaintiff desires instruction as to whether under the terms of said will, it is imperatively required that a homestead should be given to each grandchild if alive at the time of final distribution, for life, the remainder to his or her heirs, or in what manner, under the circumstances mentioned, this provision of the will should be executed.

Eleventh—Plaintiff says that he has made advancements of principal of said estate to certain of the grandchildren, as will more fully and clearly appear in his accounts, at different times, and in different amounts; and plaintiff desires to know whether such grandchildren should be charged with interest on final distribution, upon the several amounts so advanced to them?

"EXHIBIT A."

(So much of the will, executed May 30, 1876 as is material or the items following customary provisions, as to funeral expenses, settlement of claims and bequest of household furniture.)

Item 4. Except the household articles devised to my wife in foregoing item three, I devise and bequeath to my executor hereinafter named, in trust, to be disposed of by him as hereinafter provided, all my other property, real and personal, of any and every description, wherever the same may be situated and however my interest or title in the same may be evidenced. I hereby giving my said executor full, ample and complete power to manage, direct and control the same, and every part thereof, according to his own best judgment and discretion, also to rent, sell or improve the whole or any part of my real estate, and in such manner, and upon such terms and conditions as he may think best, and in case of sale, either at public or private sale as he may deem best, and to make, execute and deliver deed or deeds in fee for the same: I also hereby authorize and empower him to dispose of, whenever in his judgment it will be best for my estate so to do, any and all of my personal property, stocks, bonds, chattels of every kind, either at public or private sale, and to invest, and from time to time, re-invest in such manner and in such property, whatever real or personal, as he may deem best. The proceeds arising from the rent or sale of my real estate, and the income or sale of my personal estate, and in case of purchase of real estate by him as aforesaid, I direct that the title to the same be taken to himself as executor and trustee of my estate. It being my wish and purpose to invest my executor hereinafter named, with power to manage and control my entire estate, according to his own judgment and discretion, the same as I could do myself, if living, and subject only to, and be restrained only by the special limitations herein imposed and expressed by me.

Item 5. I will direct that my home on Prospect street, in Cleveland, be kept as a home for my wife, Harriet A. Hanna, and not be sold, so long as she lives, or desires to occupy the same as a home. Should she at any time prefer to relinquish the same, and make her home elsewhere, and shall so express her wish in writing to my said executor, I authoirze him to sell said homestead on Prospect street as an entirety, or otherwise, and invest the proceeds thereof for the benefit of my estate, and should my said wife, Harriet, desire a smaller and less expensive home than the homestead on Prospect street, and shall so express her wish to my executor in writing, I hereby authorize and direct him to purchase for her such other home, he to consult her wishes in the selection of the same and take the title thereof to himself as executor and trustee as aforesaid, and hold the same so long as my wife shall live, or desire to make the same her home, and so long as my said wife shall elect to live in the homestead of Prospect street, I desire my executor to keep the house insured to the extent of fourteen thousand dollars, and the stable connected therewith, to the extent of one thousand dollars, and to pay the premium on the same, together with all taxes, assessments and repairs on the same, out of the funds belonging to my estate, so that the same may in no wise be a charge or expense on my said wife, and I authorize my executor to insure for a suitable amount, such other home as my said wife may choose to have instead of the Prospect street homestead, should she so elect, and to pay the premium, together with current taxes, assessments and repairs thereon, out of the funds belonging to my estate.

Item 6. I devise and bequeath to my wife, Harriet A. Hanna, two thousand dollars per annum during the remainder of her life, the same to be paid to her by my executor in quarterly instalments of five hundred dollars each. The provision here made for my said wife, and in the foregoing items, three and five, are intended to be in lieu of all other statutory provision in her behalf.

Item 7. I hereby authorize and direct my executor, as soon as convenient after my death, and in case my son Cassius shall so request, to purchase a home for him at a cost not to exceed twelve thousand dollars, taking title to himself as executor and trustee as aforesaid. The same to be kept as and for a home for Cassius, free of rent, so long as he desires to occupy the same. But in the final settlement of my estate as hereinafter provided, I direct that the money expended by my executor in insurance, taxes and assessments on the home so occupied by Cassius together with six per cent. interest per annum on the cost of said home, for the time it shall be so occupied by him, shall be deducted from the amount that is to be paid to Cassius, or his children, as is hereinafter provided, or if my said executor shall deem it best to deduct the amount of said annual insurance, taxes, assessments, and interest on the annual income that is to be paid to Cassius or his children as hereinafter provided, he is hereby authorized and directed so to do.

Item 8. So far as the same is practicable in conformity with the other provisions of this will, I desire the income of my estate each year, to be applied as follows: First to the payment of taxes, insurance, assessments and repairs that may be levied or become necessary to be made on any part of my estate, together with the necessary expense of the administration of the same; including the compensation hereinafter provided to, be paid to my executor. Secondly, to the payment of the annuity of two thousand dollars hereinbefore provided for my wife Harriet A. Hanna. Thirdly, after the payment of all the items hereinbefore mentioned I desire the remainder of the yearly income or increase of my estate, that shall be collected and received, to be divided into two equal parts ; one part to be expended by my said executor for the benefit of my son Cassius and his family, so long as he, Cassius, shall live ; or in case my said executor shall deem it proper and best, but in no event otherwise, he may pay the whole or any part of such portion of the yearly net income of my estate (subject, however, to the deduction hereinbefore provided to be made of insurance, taxes, assessments and interest on the cost of the home to be provided for him as mentioned in Item 7) to my son Cassius, in cash. The other of said equal parts into which the yearly income of my estate is to be divided as provided in this section, I direct my said executor to spend for the benefit of the children of my deceased daughter, Ariel T. Whitaker, in such manner that each of said children shall have an equal and the same portion of said part with the other. In case any of said children of my daughter Ariel should die without issue before the final division of my estate, then the share of the income of my estate of such child or children so dying shall be divided between the other children of my daughter Ariel, or the issue of them, they in such case to take *per stirpes*, and not *per capita*, and in such case any of the said children of my daughter Ariel should die before the final distribution of my estate, leaving issue, I direct that the share of the income of my estate which would be coming to such child of Ariel, if living, shall be paid to the issue of such child share and share alike, and I hereby authorize my executor to pay in cash, if he shall deem best, the whole or any part of such share of the income of my estate as may be due to each of the children of my daughter Ariel as aforesaid. He to take in such case the receipt of the guardian or other person who for the time being may be charged with the care or custody of said children or either of them for any payment so made, and in the expenditure of income for the benefit of my son Cassius and his family, as well as for the children of my daughter Ariel. I desire my executor to have in view the maintenance and the education of my grand-children on a scale comporting with their condition and rank in life, and if in the judgment of my said executor the net annual income of my estate as above described, cannot all be properly and judiciously expended or advanced to Cassius and his family, and to the children of Ariel, as hereinbefore described, I authorize and direct my executor to invest such surplus as may remain after what he deems a reasonable expenditure has been made for the benefit of the child or grandchild who would be entitled to it under the foregoing plan of distribution.

Item 9. I will and direct that my executor shall continue to control and manage my estate, and distribute, or distribute and invest the annual income of my estate as hereinbefore provided, from year to year, until the youngest child of my daughter Ariel then living shall come of age, or until such further period as in his opinion the welfare of my son Cassius or of my grandchildren will be thereby promoted and whenever it shall so seem prudent to my said executor but in no event till then. I authorize and direct him to divide and distribute the whole of my estate among my grandchildren, share and share alike, to each that may be living at the time of such distribution, or if before such final distribution, any of my said grandchildren shall have died, leaving issue, the issue of such deceased grandchild shall take the share that would be due to such

Brooks v. Hanna.

grandchild, if he or she were living, share and share alike. And I hereby authorize my executor, if at any time it shall seem suitable and prudent to him, to advance any portion of the final share of my estate to either of my said grandchildren, that would be due to them under the plan of distribution herein provided, and in such final settlement, I direct my said executor to invest a portion of the share hereinbefore provided for each of my grandchildren in a home for such grandchild in which said child shall have a life-estate, with remainder to his or her heirs, it being my wish and purpose that each of my said grandchildren shall be secured in a home beyond any contingency, during the period of his or her life. Provided, however, that such final distribution of my estate shall in no event be made during the lifetime of my wife, Harriet A. Hanna, nor shall advances be made to my grandchildren as hereinbefore provided, to such an extent as to impair the annuity of two thousand dollars which is to be paid to my wife as aforesaid, and provided further, that before any such advances are made, or before any advances are made as hereinafter provided may be made to my son Cassius for the benefit of himself and his children, and in any event before the final distribution of the principal of my estate as aforesaid shall be made, I wish and direct my executor to ascertain the amount of advances of money, I shall have made during my lifetime to my son Cassius in excess of what I shall have made to my deceased daughter Ariel, or to her and her children together, and deduct the amount of such excess as it may exist at the time of my death, interest at the rate of six per cent. per annum being added thereto from the time of my death, from the sum total of my estate, which amount so deducted, shall be divided equally between the children of my daughter Ariel and their issue *per stirpes*, it being my wish thus to equalize between my children and the descendants of each of them, the benefits of my estate.

Item 10. In order to encourage my son Cassius to habits of business and economy, and to acquire a proper regard for property and its value, I hereby authorize my executor, in case he shall deem it prudent and proper so to do, but in no event otherwise, to make advances from the principal of my estate, to my son Cassius for the benefit of himself and his family, in such amounts and at such times as to him, my said executor, shall seem prudent and safe; but in no event shall such advances be made to such an extent as to impair the annuity herein provided for my wife, nor shall they be so great in amount as, combined with the excess of advances made to him during my lifetime over those made by me to my daughter Ariel or to her and her children together, interest from the time of my death being added thereto at six per cent. per annum, would amount to one-half the principal sum of my estate, and provided that the amount of any advances as aforesaid that may be made to my son Cassius by my said executor, shall be deducted by my said executor from the amount that would be due to the children of my son Cassius, under the foregoing plan of the final distribution of my estate mentioned in item 9 of this my will.

Here follows provisions appointing J. Twing Brooks executor and trustee without bond, and investing him with all powers, duties and rights conferred by the will, and permitting to act without order of the probate court.

Item 13. I hereby authorize and direct my said executor, J. Twing Brooks, as compensation for his services as executor and trustee of my estate and in lieu of the compensation fixed by law, to pay himself out of the income of my estate, or in default of income, then out of the principal of my estate, one thousand dollars per year, for the first five years, of his administration of the same; after the expiration of five years, for which compensation is thus named, should the value of my estate have increased or the labor and time required in the discharge of the duties of executor and trustee of my estate be increased, I will and direct that his compensation be proportionally increased, and in addition to such compensation, I authorize and direct him to pay, out of the funds belonging to my estate his traveling expenses and other necessary costs and expenses incurred in the management of my estate, and in carrying out the provisions of this my last will.

CODICIL, EXECUTED JUNE 3, 1881.

Item 1. Believing it to be for the best interest of my estate and of all those who are or may be interested in the same, I do hereby revoke, cancel and annul the whole of item ten in said will, beginning with the words "In order to encourage" and ending with the words "Item 9 of this my will," and I hereby declare said item ten (10) and every part thereof to be no longer any part of my said last will and testament.

Item 2. In order to settle definitely and make forever free from dispute that portion of item eight (8) of my said will which relates to the division and distribu-

tion of the annual net income of my estate, I hereby declare it to be my wish and will, and I do hereby accordingly direct that the one-half of said yearly net income which is to be expended for the benefit of my son Cassius and his family is to be expended for his benefit only until the time arrives when the final distribution of my estate shall be made under the provisions of said will, and to this extent are the words in said will directing said portion of income to be expended for his benefit "so long as he, Cassius, shall live" to be modified and controlled; also that the one-half of said annual income which is to be expended for the benefit of Cassius as aforesaid, shall until expended or otherwise disposed of as provided in said item be held and kept by my said executor in his possession in trust, to the end that the same may be applied as my said executor shall deem best, and not otherwise, for the benefit of my son Cassius and his family. Also that any portion of said share of income which may be invested for the benefit of Cassius, shall likewise be held and kept in his own possession in trust by my said executor, the same to be expended for Cassius' benefit or paid to him at such time and in such amounts as he, my said executor, may deem best and not otherwise.

Item 3. Unless my executor shall have sooner made a final distribution of my estate under the powers granted in my said will, I hereby will and direct that such final distribution be made as soon as may be, after the death of my son Cassius, provided at that time the youngest child of my daughter Ariel then living shall have reached the age of majority.

Item 4. I hereby revoke, cancel and annul so much of items eight and nine (8 and 9) in said will as requires my executor to charge annual interest at six per cent. on the excess of advances made to Cassius over those made to Ariel and to her children and I hereby direct that no interest whatever be computed on such excess, in determining the amount which shall be deducted from my estate for the benefit of Ariel's children, before the final distribution of the same.

Item 5. In event that my son Cassius should have no children living, nor grandchildren living at the time of the final distribution of my estate, as provided in my said will, I direct my executor to retain in his own custody and possession one-half of the whole estate as it may then exist, and hold the same in trust so long as Cassius may live, giving to Cassius so much of the annual net income of said one-half as he may deem best, and at the death of Cassius, said one-half of my estate so retained and held to be by said executor distributed *per stirpes* among the children and grandchildren of my daughter Ariel. The other half of my estate, in the event spoken of in this item, to be divided between the children and grandchildren of my deceased daughter Ariel in the manner set forth in my will, whenever such final settlement shall take place

APPEAL from Cuyahoga County Common Pleas.

CALDWELL, J.

There are six of these cases on our dockets, being different appeals taken in the same case taken in the common pleas court, and separately docketed in this court. They have been consolidated with the first case No. 2419 of the docket, entitled and this decree disposes of all the cases.

The plaintiff brings his action as trustee of the will of Robert Hanna, and asks the court to direct him how he is to execute certain portions of his trust; in other words, to construe the will as to certain particulars designated by him in his petition. In the petition he has designated the different instructions that he wishes, by numbers, and I follow those numbers.

As to when he may make final settlement and distribution of the estate, we hold that it is within his discretion whether he does that before the death of Cassius B. Hanna or soon as he can thereafter.

As to his next inquiry, we construe the will to be that upon final distribution neither Cassius B. Hanna nor his wife will be entitled to any portion of the *corpus* of the estate.

As to his fourth inquiry, we hold that Cassius B. Hanna has no interest in the income beyond such sums as the executor, in his judgment, may deem it proper to expend for his support prior to distribution.

Brooks v. Hanna.

His fifth inquiry is as to what distribution he shall make of the monies realized from the coal lease. Shall he account for it as income, or shall he divide it as principal?

We hold that he is to divide it as principal. We do not so hold without the first having examined very carefully the cases cited upon the hearing of the case and in the briefs of counsel; and we have not overlooked the cases cited from the Supreme Court of Pennsylvania, but we distinguish this case in some particulars from the Pennslyvania cases.

It is the law, and so held by all the courts so far as we have observed, that if this coal has been sold outright by the trustee, it would be regarded by the courts as a part of the land and to be divided as capital. If any portion of the land had been sold, or the whole of it, for a money consideration, the money realized therefor would take the place of the land and still be regarded as belonging to the principal of the estate.

The Pennsylvania cases are cases where the one taking the income was given a life-estate, the remainder-man taking what was left at the end of the life-estate.

And those cases follow the law as laid down by all the authorities, that where mines are opened at the time that the will takes effect, the life-tenant gets a right to work the mines during the time of her life-estate; and the same is true of quarries, sand-beds, of gravel and of clay, and if the will, by which the life-estate is created, provides that mines are to be opened by the trustee and worked, the life-tenant is to have the profits arising from the working of the mines, and the remainder-man only gets such coal or other material as is not worked out during the life estate. The principle on which this is held in the Pennsylvania cases, we apprehend, is this: That if the mine is open at the time of the death of the testator and in operation, the clear intent of the testator is that they shall continue to be worked; and if he provides in his will that they are to be opened and worked, then that is an appropriation by him in his will that so much of the coal or other material beneath the surface as shall be worked during the time of the life-estate shall go to the life-estate so far as there shall be net earnings from such mine. And, in such cases, the will in and of itself gives to the life-tenant the profits of the mine, and gives to the remainder-man only what is left at the death of the life-tenant.

In examining the will before us for consideration, we look in vain for anything in the will that would indicate that the testator intended that this coal should be worked by way of a lease for the benefit of those who were to take the income of the estate. There is no positive time fixed by the the law or by any certain event when his estate is to be distributed among the beneficiaries. The only event that sets any limit upon the matter of distribution is the death of Cassius B. Hanna. There is a provision that there shall be no distribution during the life of the widow that would, in any way, interfere with her getting the annuity provided for her. But she was of that age at the death of the testator that he must have anticipated that the holding of the estate for this purpose would be a very short duration.

In this will there is no life-tenant. Those who are to receive the income, may receive it for one year; they may receive it for two years; and the time they shall receive it is entirely within the option of the trustee.

In this will, unlike the cases cited from Pennsylvania, the income is not given as an absolute estate to one person for life, and the remainder

to others, but the same persons take both income and the *corpus* of the estate when it is distributed. The only distinction is the proportion in which they are to be divided.

In our judgment, the testator, at the time of his making his will, intended that his entire estate, both income and principal, should vest and be in the five grandchildren named in his will; and the only object or purpose of keeping income separate from capital is the different proportions in which they are divided among the five grandchildren or among those who are to receive them. And we think it was the intent of the testator that his estate, as it existed at the time of his death, should be the estate that the five grandchildren should have upon final distribution. They took the property at the time of his death—if not the legal title to the same, which was probably vested in the trustee, at least the equitable title—and although the discretion of the trustee is broad as to his rights over the property to sell and rent, yet we are of the opinion that it was not the intent of the testator, under the broad powers given to his trustee, to convert a part of the real estate into money and call it income.

We are told by the trustee, in his testimony, that the coal under the lease he has made, in all probability will amount to about $120,000 and, after that is taken from the land, what remains is almost, if not quite, worthless. The trustee had it within his power to distribute this estate so that none of this $120,000 should ever be realized before such distribution. He has had the same power every year since the lease was made, and he has the power to continue the lease until all the coal is exhausted from the land and the $120,000 fully realized. So if this $120,000 is to be divided as income and not as capital, it will be observed that such division is not determined by anything expressly stated in the will, but merely by what the trustee sees fit to do with the property, and we do not believe that it was the intention of the testator to place in the hands of his trustee the power of saying that virtually all of that land should be divided as income, or, on the other hand, of saying that by an early distribution it should all be divided as capital, and we discover, therefore, we think, a difference between this case and the cases cited from Pennsylvania, which would lead to a different conclusion, and our conclusion is that whenever the trustee distributes the money realized under the lease of the coal lands he shall distribute it as capital and not as income.

The sixth inquiry is substantially the same as the fifth, and, we think, is sufficiently answered by what has already been said in answering the fifth.

Upon reading the will as to equalizing the heirs of Mrs. Ariel and Cassius B. Hanna for sums of money paid by the testator to Cassius B. Hanna in his lifetime, amounting to $53,770.64, we hold that the will means that the trustee is to agree with Cassius B. Hanna as soon as he can after the death of the testator, as to the amount of those advancements and that when the executor comes to equalize the heirs of Mrs. Ariel, he is to take from the principal of the estate $53,770 64 and divide that equally among her three children, and what remains of the principal of the estate after such deduction is to be divided into five equal parts, and one part goes to each grandchild referred to in the will. That when the amount was ascertained by the trustee to be $53,770.64, that amount was not to draw interest from the date of such determination, and when that amount is paid over to the three grandchildren, it is to be paid without

Brooks v. Hanna.

interest, providing distribution is made as of the date of the death of Cassius B. Hanna or before.

We are told that this rule is inequitable; that the intention of the testator was to equalize his two children in his estate. Such, undoubtedly, was the intention of the testator at the time he wrote his will; but it just as clearly appears, at the time he wrote his codicil to his will, that his intention was that interest was not to be computed on the advancements to Cassius B. Hanna. And we do not find it to be the intention that the amount necessary to equalize, when it should be ascertained, should draw interest until the same was paid.

Thus far I have only spoken of the construction to be given to the will and the codicil when construed separately. The only modification that we can see that the codicil makes of what was originally written in the will, is that it relieves the advancements to Cassius B. Hanna from the payment of interest. Then, if we substitute this into the the original will, it would read as it does now; except that Cassius B. Hanna should pay no interest upon the advancements made to him before the death of his father. But it is claimed that the will, as thus modified by the codicil, is susceptible of this construction: That when the amount was ascertained, necessary to equalize, that the determining of the amount and what is said about having it paid to the children of Mrs. Ariel in order to equalize, is susceptible of the meaning that that much of the estate was, at the time of such ascertainment, appropriated, by force of the will, to the children of Mrs. Ariel and became their property, and if not then paid over to them, should be paid at as early a date as the estate would permit of such payment, without defeating other provisions of the will, and, if not paid at the time of the ascertainment or at such future time as payment could be made without defeating other purposes of the will, then, from such time, whether it be the former time or the latter time, said amount would draw interest.

But, in reading the will, we cannot come to the conclusion that it was the intention of the testator that the children of Mrs. Ariel should receive the sum that would equalize them at the time of such ascertainment, and, if not then receiving it, that they should receive interest until it was paid. Nor can we reach the conclusion that it would become their heirs as soon as it could be paid to them, without defeating other benefits expressed in the will.

But the will, we think, taking all that pertains to this subject, leaves to the trustee an option as to when he should pay that $53,770 64 and that the same should draw no interest until such time of payment.

The eighth inquiry is as to the funds out of which the trustee shall pay the necessary expenses of the litigation that arose in the United States courts, wherein the interest of Cassius B. Hanna was sought to be appropriated to the payment of his debts by some of his creditors.

It may have been to the interest of all parties concerned to have this will construed as to the possibility of the interest of Cassius B. Hanna in the estate being reached; but if the children of Mrs. Ariel had any interest at all, it was very slight; and we think that those fees and expenses should be charged to and taken out of the monies going to Cassius B. Hanna.

As to whether the trustee has a right to pay out of the funds of the estate, over and above an allowance made to him in the will, the expenses of his bookkeeper—it is difficult for us to answer this question.

The nearest we can come to it is to say this : That if the keeping of the books is a duty not contemplated within the duties prescribed by the will that the trustee is to perform, then it is a necessary expense not in contemplation of the will to be taken out of the one thousand dollars a year. And we hold that if that expense is necessary, the bookkeeper may be paid a reasonable amount for such work out of the monies of the estate, over and above the compensation of the trustee.

And under the ninth inquiry we hold that when the income of any one year is insufficient to bear the necessary expenses of that year such as taxes, etc., and allow a sufficient remainder to pay the trustee his annual dues under the will, then he may take any deficiency necessary for such payment out of the body of the estate and shall not thereafter, by reason of income coming into his hands, charge the same up to income and credit it likewise to the estate.

As to the duty of the trustee to buy a homestead for each grandchild, etc., no occasion has arisen for the construction of this portion of the will, and, in fact, it is in evidence that no grandchild has applied for such a home, and, in all probability, none ever will apply. And we understand it to be the rule in this state, that we are not to answer cases that are likely to arise or may possibly arise, but only such as have arisen in the execution of the trust by the trustee.

The only remaining inquiry that it is proper for us to answer is as to whether the trustee, after he had made advancements to any of the grandchildren, has a right to charge interest on the same.

It seems, from the reading of the will, that what is meant by advancements to grandchildren by the trustee is intended to mean partial distribution.

If any money is loaned and a note taken for the same, or any other evidence of indebtedness, it is not an advancement nor a distribution.

We hold that when money is actually advanced or distributed by the trustee to the grandchildren, the money thus advanced becomes the property of the one to whom it is given and the trustee no longer has any control over it or any right to interest on the same, any further than that the law requires and it is equity that the grandchild should be kept as near equal as possible in the distribution of the estate, that no advantage should be given to one more that is given to others—and we would not hold but that in working out such equity, if the trustee should find that one of the grandchildren was especially needy more than others, that he might help such one by funds in his hands belonging to the principal of the estate, and charge interest on it, but such use should not be considered in the light of distribution or of advancements.

*Dickey, Brewer & McGowan*, for plaintiffs.

*Norton Horr*, for defendants.